## UNITED STATES

v.

## Oscar L. LONG, Virginia Johnson, Joan C. Contee, Clinton Johnson and Charles E. Jackson.

### Crim. No. 1108–58.

United States District Court
District of Columbia.

Jan. 19, 1959.

8. See note 8 on page 726.

dence seized at 1403 F Street, N. E., D. C.

Count one of the indictment reads:

"Continuously during the period from about March 10, 1958 to about May 19, 1958, within the District of Columbia, Oscar L. Long, Virginia Johnson, Joan C. Contee, Clinton Johnson and Charles E. Jackson were concerned as owners, agents and clerks, and in other ways, in managing, carrying on and promoting a lottery known as the numbers game."

Counts two through seven each charge that Charles E. Jackson sold Milton G. Johnson a chance in a lottery; only the date differs in each of these six counts.

Defendant Jackson asserts that the counts are duplicitous as to him since they all rest upon one statutory provision, 22 D.C.Code § 1501, for their validity.

In Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, the Court held that two sales of narcotics, in violation of the Harrison Narcotic Act, 26 U.S.C. § 4701 et seq. constituted two separate violations authorizing two consecutive sentences. This was so even though there was no substantial interval of time between the two sales [3] and even though the sales were made to the same purchaser. It should be noted that with reference to these two sales of narcotics, only *one* statutory provision was involved. Thus one of the questions presented in Blockburger—Are separate sales separate violations of a single statutory provision?—is the same question presented here. In Blockburger, the Court held that there were separate violations. Similarly, this Court holds that six sales of lottery tickets are six violations of § 22–1501. While Blockburger was decided twenty-seven years ago, its authority has not been impaired. Gore v.

---

Frederick G. Smithson, Asst. U. S. Atty., Washington, D. C., for the Government.

De Long Harris, Washington, D. C., for defendants Virginia Johnson and Charles E. Jackson.

YOUNGDAHL, District Judge.

Defendants have been indicted for violations of the District of Columbia Code provisions [1] prohibiting gambling and for violation of the United States Code provision [2] requiring the payment of a tax as a prerequisite to engaging in the business of accepting wagers.

Two motions have been filed. Defendant Jackson seeks the dismissal of counts one through seven of the indictment, or, in the alternative, the striking of counts two through seven. Defendant Virginia Johnson seeks the suppression of evi-

1. D.C.Code §§ 22–1501, 1502, 1505 (1951).
2. 26 U.S.C. § 4411.
3. In the instant case, the six sales took place over a ten-week period and there was at least a six-day interval between each of the sales.

United States, 1958, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405. United States v. Universal C.I.T. Credit Corp., 1952, 344 U.S. 218, 73 S.Ct. 227, 231, 97 L.Ed. 260 is inapposite since the Court was there concerned with a non-penal regulatory statute which was construed as punishing "a course of conduct".

■ A question arises, however, concerning count one of the indictment. Because of the broad and general language in which it is cast, count one charges, in effect, that Jackson (among others) violated § 22–1501. The question, therefore, is whether Jackson can be found guilty under count one if he is found to have committed the acts giving rise to counts two through seven. This cannot be determined now. Since § 22–1501 is capable of violation in ways other than the sale of a chance in a lottery, the Court cannot now determine from the bare allegations of the indictment whether count one is simply a summary restatement of counts two through seven. This determination must await the trial on the facts; if the Government proves Jackson violated § 22–1501 by proving only the six sales that gave rise to counts two through seven, then Jackson cannot be found guilty of count one. In any event, counts two through seven must stand.[4]

■ Defendant Virginia Johnson's motion seeks the suppression of evidence seized by the Government from premises at 1403 F Street, N. E. She asserts that at the time of the seizure she was lawfully in possession of the premises and that the search warrant issued on May 19, 1958 for a search of these premises was invalid in that it did not issue upon probable cause.[5]

Having received a complaint that numbers were being written in 613 2nd Street, N. E. by one Charles Jackson and that one Desso Cox, living at 613 3d Street, N. E., was picking them up, the police launched an investigation on March 10, 1958. This investigation took place over a ten-week period, and upon its completion the investigating officers swore out an affidavit. Based on this highly detailed, five-page document, the U. S. Commissioner issued the search warrant in question.

The affidavit first makes mention of the premises here involved, 1403 F Street, N. E., in its description of the police officers' observations of April 24th. However, the observations prior to that date are important and will be discussed here since they serve to tie the individuals, later seen entering 1403 F Street, N. E., to the gambling operations taking place at 613 2nd Street, N. E.

The particular time of day at which each of the observations occurred will not be set forth in the interest of clarity. Suffice it to note that they all took place between the hours of 12:00 noon and 3:30 P.M.; these three and one-half hours being known to be the "rush-hour" for numbers operators.

Officer Johnson played a number with defendant Jackson in 613 2nd Street, N. E. on eleven different occasions beginning on March 10, 1958. One other time the officer placed a bet at 613 2nd Street, N. E. with an unidentified man who told the officer he had been sent by Jackson to take bets.

On nine different occasions between March 10 and April 7, 1958, the officers observed Jackson and a Jane Doe #1 enter the premises at 613 3d Street, N. E. with "bulging pockets",[6] remain a brief period of time, and reappear without bulging pockets.

---

4. The Government has the option of specifying the crimes.

5. The further allegation that the warrant was illegally executed was withdrawn by counsel at oral argument.

6. "Bulging pockets" are a highly significant tell-tale sign in the numbers business. To the effect that they are relevant to establish probable cause, see United States v. Bell, D.C.D.C.1955, 126 F.Supp. 612, affirmed in Woods v. United States, 1956, 99 U.S.App.D.C. 351, 240 F.2d 37, certiorari denied, 1957, 353 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760.

On March 26, 1958, Desso Cox was observed leaving the basement of 613 3d Street, N. E. with his pockets bulging. The officers saw Cox walk to the corner of 3d and F Streets, N. E., where he was seen to hand a brown envelope, which he took from his pocket, to John Doe #1 who was then parked in a 1950 Dodge sedan, tags KJ–842. (This automobile was owned by one Wilbert Gross, a known and convicted numbers operator.)

On eleven different occasions, beginning April 24, 1958, the officers observed either John Doe #1 or Oscar Long enter 1403 F Street, N. E.[7] Each time the stay would be a brief one (usually three minutes). Each time the entrant's pockets would be in a different condition upon the entrant's reappearance. That is, they would either enter without bulging pockets and reappear with bulging pockets, or they would enter with bulging pockets and reappear without bulging pockets.

On April 24, 25, and 28, 1958, the officers observed John Doe #1 drive up and park at 613 2nd Street, N. E. in the same Dodge sedan as that observed on March 26th. They saw him enter 613 2nd Street, N. E., without his pockets bulging, reappear about five minutes later with bulging pockets, drive off, stop at two places along the way to 1403 F Street, N. E., at each of which he stayed roughly five to ten minutes, arrive at 1403 F Street, N. E., get out of the Dodge without bulging pockets, enter 1403 F Street, stay three minutes, come out with bulging pockets.

On April 29, 30, May 1, 2, 5, 6, 7, and 8, the pattern was as follows with slight variations: Oscar Long entered 1403 F Street, N. E., at which time his pockets were not bulged, stayed about three minutes, came out with his pockets bulging, drove off in a 1958 Lincoln, tags KJ–843,[8] met John Doe #1, got into the Dodge sedan with his pockets bulging and drove away with John Doe #1 in the Dodge.

On May 16th, John Doe #1 was seen speaking to Charles Jackson, the man with whom Officer Johnson had placed eleven wagers.

The affidavit concluded: "The Officers also firmly believe that there is now being secreted in the premises 613 2nd Street, N. E. and 1403 F Street, N. E. numbers slips, numbers books, or other numbers paraphernalia  *  *  *".

The Court is convinced that the affidavit sets forth "probable cause" for the issuance of a search warrant for the premises at 1403 F Street, N. E. The statement of probable cause most quoted is:

"Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 1949, 338 U.S. 160, at pages 175–176, 69 S.Ct. 1302, at page 1310, 93 L.Ed. 1879, quoting Carroll v. United States, 1925, 267 U.S. 132, at page 162, 45 S.Ct. 280, 69 L.Ed. 543.

While we must always be careful to maintain constitutional standards, we must not convert these standards into impassable barriers making the ferreting out of crime only hopeless and wishful. Courts must retain perspective when deciding the question of probable cause. Was it not an altogether reasonable (indeed, almost obvious) explanation that 1403 F Street, N. E. was being used in the numbers business when the officers observed the pattern of conduct of John Doe #1 and Oscar Long? On several days, John Doe #1 did not even vary his actions but instead stopped at each of the places in the precise order as the previous day. The operations of the au-

---

7. It is noteworthy that this first mention of 1403 F Street, N.E. immediately follows a statement to the effect that between April 8 and 16, 1958, the officers determined that 613 3d Street, N.E. was no longer being used as a numbers drop.

8. Note that this was the license plate issued immediately after the issuance of the Dodge's license plate.

tomobiles, the numbers of observations made, the time of day that the observations occurred, the length of time spent in 1403 F Street, the tell-tale pockets, the actions of the two men around 613 2nd Street (at which one of the officers had placed many bets) and their actions when they met, all justified the affidavit in issue.

Counsel has placed much reliance on United States v. Johnson, D.C.D.C.1953, 113 F.Supp. 359. Even if the facts in that case were identical with the facts in the instant case, which they decidedly are not, the Court would have to find probable cause here since the Johnson case has inferentially been overruled. In United States v. Hall, D.C.D.C.1955, 126 F.Supp. 620, the District Court suppressed evidence "for the reasons stated by this Court in United States v. Johnson" (126 F.Supp. at page 621). The Court of Appeals, however, found that probable cause had been established, and in companion cases, reversed. United States v. Carroll, 1956, 98 U.S.App.D.C. 244, 234 F.2d 679.[9] Since the Court is of the opinion that the facts here make out a stronger case for the existence of probable cause than the facts in Hall and since the Court of Appeals found that probable cause existed in Hall, *a fortiori*, probable cause for the issuance of the search warrant existed in the instant case.

Counsel further questioned whether probable cause can be established by evidence not legally sufficient to convict. In Washington v. United States, 1953, 92 U.S.App.D.C. 31, 202 F.2d 214, certiorari denied 1953, 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377, a case concerned with the existence of probable cause for the issuance of a search warrant for premises believed to be housing gambling activities, the Court, per Bazelon, J. said:

"The existence of probable cause does not require that the officers then possess legal evidence sufficient to convict. Insofar as Schencks v. United States [55 App.D.C. 84, 2 F. 2d 185], might be construed to the contrary, it has been overruled by Brinegar." 202 F.2d at page 215.

It is noted that an eleven-day period elapsed between the time the last observation of 1403 F Street was had and the day that the search warrant was issued. Counsel urges this upon the Court as significant on the question.

The Court is of the opinion that this delay cannot be said to vitiate the probable cause established on May 8th (if not earlier); May 8th being the last day of observations of 1403 F Street, N. E. If it held otherwise, the police would be in an anomalous position. On the one hand, they must make sufficient observations to warrant a finding of probable cause. On the other hand, they must swear out the warrant, it is said, immediately after the last observation. If they are excessively careful in accusing a particular premises of being used in violation of the criminal laws, and allow time to elapse, then, it is said, the probable cause they had established on the last day of observations (the probable cause that out of an abundance of caution they perhaps were seeking to strengthen) disappears. While a long period of time may have this effect, the Court does not believe an eleven-day period does. Nuckols v. United States, 1938, 69 U.S.App.D.C. 120, 99 F.2d 353; Annotation, 162 A.L. R. 1406. Moreover, it is noted that the affidavit does not state that during this eleven-day period the police failed to observe anything at 1403 F Street, N. E.; they simply were not guided there by the men under observation.

In passing, the Court notes that United States v. Price, D.C.D.C.1957, 149 F. Supp. 707, in which this Court granted a motion for the suppression of evidence seized under a search warrant, is a far different case than the instant one. In the Price case bets were placed with a

---

9. The Supreme Court reversed on a procedural point, not questioning the Court of Appeals' opinion concerning probable cause. Carroll v. United States, 1957, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442.

single person and observation made of this person alone over a period of time. He was seen to enter 1445 Swann Street (the premises for which the search warrant had been issued) during the time when numbers activity is conducted. However, there was nothing peculiar in Price's manner or appearance from which to infer that his entrance into these premises was anything but innocent.

The motions are denied. Orders to that effect have this day been rendered.