UNITED STATES of America

v.

Judith D. KUCH.

Crim. No. 656–68.

United States District Court
District of Columbia.

Oct. 28, 1968.

Supplemental Opinion May 27, 1969.

Carl Rauh, Asst. U. S. Atty., Washington, D. C., for the Government.

Albert J. Ahern, Jr., Washington, D. C., for defendant.

## MEMORANDUM OPINION

GASCH, District Judge.

On December 22, 1967, the United States Commissioner issued a search warrant for 5333 MacArthur Boulevard, N.W.[1] During the resulting search, quantities of marihuana, LSD and paraphernalia were found and seized. Judith D. Kuch was subsequently indicted on five counts charging violations of United States and District of Columbia law.[2] Defendant now moves to suppress the evidence seized on the grounds that: (I) there was no probable cause for the issuance of the warrant; (II) there were impermissible delays, both between the report of the informer and the application for the warrant, and between the issuance of the warrant and its execution; and (III) the execution of the warrant was faulty.

I. Probable Cause.

■ Paragraph two of the affidavit supporting the issuance of the warrant now before this Court states that a reliable informant had told the affiants that marihuana and hashish were being kept and sold on the premises described as 5333 MacArthur Boulevard, N.W.,

that the informer had seen marihuana and LSD on the premises and that large groups of people came to the premises and used drugs there.[3] Defendant argues that there is no evidence in that statement (paragraph two) to indicate the informant was reliable and that, therefore, there were no facts from which a neutral and impartial magistrate could conclude this information was reliable. The Court agrees that this paragraph alone could not provide the magistrate with the requisite probable cause since it relates no corroborating facts. Defendant, however, unnecessarily limits the possibilities for corroboration.

The first paragraph of the affidavit states that another informant—more fully described as one whose information in the past had proved reliable and had led to the arrest of persons for violating the narcotics laws and the seizure of LSD and marihuana—told the affiants that J. D. Kuch had moved into a house on MacArthur Boulevard near the District line and was setting up a laboratory nearby to manufacture dangerous drugs.

In subsequent paragraphs, the affiants swear that they conducted surveillance of the premises and as verification of their information ascertained that J. D. Kuch was known to be a user of marihuana and LSD and that she was living on the premises described by the informer. Their surveillance indicated that large groups in "hippie" attire frequented the premises, that autmobiles parked in front of the premises were registered to known users of marihuana, that activities in the house did not begin until late at night or early in the morning and that at least one male visitor spent some time "bending over" a clump of grass.

1. Although there appeared to be some confusion as to the identification of the premises since two houses, alternatively described as red and green or front and rear, are located on the same lot, the warrant specified both, as well as the curtilage. Similarly, the affidavit adequately described both.

2. 26 U.S.C. § 4704(a); 26 U.S.C. § 4744 (a); 21 U.S.C. § 331(q) (3); and 33 D. C.C. § 702(a) (4).

3. The affidavit is set out in the Appendix.

The affiants further swore they received information from the Bureau of Drug Abuse Control that a letter found during a search in Philadelphia stated that James Hagan was in the process of setting up a laboratory to manufacture illicit drugs. A car parked in front of the premises on MacArthur Boulevard was registered to James Hagan. Finally, the affiants stated that they had been involved in searches of other premises previously occupied by the defendant and had on those occasions seized illicit marihuana and LSD.

Defendant vigorously attacks each of these statements arguing that they have no legal significance, no probative value or that in some cases they are merely observations of the sometimes bizarre behavior of young people. Defendant's assertions are in part correct. No single paragraph of this affidavit is legally sufficient to justify the issuance of a warrant and viewed separately, some of the statements appear irrelevant. By dissecting the affidavit paragraph by paragraph, sentence by sentence, defendant seeks to avoid the totality of the instrument. By this method, the defendant obfuscated the very test she asserts the affidavit fails to meet.

As the defendant has noted, the duty of the Court on this motion is to determine whether there was sufficient information before the United States Commissioner so that he, as a man of reasonable prudence, could properly have concluded that LSD and marihuana were probably being kept for use and sale on the premises described.[4] The Supreme Court has described both the quantity and the quality of evidence which it deems "sufficient" both to justify the issuance of a search warrant and correspondingly to insure that constitutional rights are protected by having licenses to search constitutionally secured areas issued only upon the decision of an independent magistrate.[5]

■ Quantitatively, the information must be that from which a reasonable man could conclude that there probably are illicit paraphernalia on the premises to be searched.[6] Logically this is less evidence than that required to convict.[7]

■ Qualitatively, since affidavits are not drafted by expert lexicographers, they should be read as a whole with the common sense implicit in the reasonable man standard.[8] Similarly, information they contain may consist entirely of hearsay, as long as there are some facts which would indicate to an independent commissioner that there is reason to believe the hearsay is reliable.[9]

In this regard, defendant has directed the Court's attention to the standards and affidavits in *Aguilar* and *Ventresca*.[10] The Court agrees that those are the appropriate standards but notes that the affidavits they examine are near the poles of the law chartered for search warrants. The Supreme Court's opinion concerning the affidavit in Jones v. United States is more helpful to the

---

4. Rugendorf v. United States, 376 U.S. 528, 533, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Spinelli v. United States, 382 F. 2d 871, 880 (8th Cir. 1967) (en banc), cert. granted 390 U.S. 942, 88 S.Ct. 1025, 19 L.Ed.2d 1130 (1968).

5. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725 (1960).

6. Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509 (1964).

7. United States v. Ventresca, 380 U.S. 102, 107, 85 S.Ct. 741 (1965); Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725 (1960); Brinegar v. United States, 338 U.S. 160, 172, 69 S.Ct. 1302, 93 L. Ed. 1879 (1949).

8. United States v. Ventresca, *supra*, note 7 at 108, 85 S.Ct. 741.

9. Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725 (1960).

10. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509 (1964).

instant case.[11] There a warrant underpinned by an affidavit based solely on hearsay was sustained because there was some basis upon which it could be determined that the hearsay was trustworthy.

It is not suggested that the Commissioner doubted Didone's [the affiant's] word. Thus we may assume that Didone had the day before been told, by one who claimed to have bought narcotics there, that petitioner was selling narcotics in the apartment. Had that been all, it might not have been enough; but Didone swore to a basis for accepting the informant's story. The informant had previously given accurate information. His story was corroborated by other sources of information.[12]

The affidavit in relevant part stated:

This same information, regarding the illicit narcotic traffic * * * has been given to the undersigned and to other officers of the narcotics squad by other sources of information.[13]

■ Thus, as in *Jones* and under the standards of *Aguilar* and *Ventresca*, the paragraph of the affidavit in the instant case stating that an informant had seen marihuana and LSD on the premises is supported by corroborating information in the remainder of the affidavit gleaned from surveillance, the Bureau of Drug Abuse Control and another informer.

■ Defendant argues that the information gained from prior searches and seizures, and, in effect the defendant's prior record are incompetent evidence and may not be used to "boot strap" a later search warrant. Defend-

ant blurs the issue. Here, the question is not the guilt or innocence of the defendant.[14] The present issue is whether there was corroboration of the reliability of the informant. The prior conduct, therefore, need not be automatically excluded. The Court, however, considers that it is of miniscule probative value since unlike the other information, it describes neither defendant's conduct at the time in question nor any statement made by the informant.[15]

■ Defendant asserts that the other facts in the affidavits are subject to interpretations which do not corroborate the informant's statement. The Court agrees that facts are always subject to differing interpretations. That, however, is of no moment.[16] All that is determined here is that they could reasonably be interpreted to provide corroboration for the informer's statement. Correspondingly, it cannot be said that there was so little basis for accepting the hearsay that the Commissioner acted improperly. No more is required.[17]

II. Delay.

Defendant argues that there was an impermissible delay (1) between the date to which the informer's statement related and the date of the application for the warrant and (2) between the issuance of the warrant and its execution.

■ First, defendant's argument that a delay of ten days before application for a search warrant for items which might be consumed or transferred is necessarily fatal, like many non sequiturs, has a certain appeal.[18] It is apparent, how-

---

11. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725 (1960).

12. *Id.* at 271, 80 S.Ct. at 736.

13. *Id.*, at 267–268, 80 S.Ct. at 734, n. 2.

14. United States v. Ventresca, 380 U.S. 102, 107, 85 S.Ct. 741 (1965).

15. *See* United States v. Delia, 283 F.Supp. 470, 474 (E.D.Pa.1968); *but see*, Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736 (1960):

"[T]hat petitioner was a known user of narcotics made the charge against him much less subject to scepticism than would be such a charge against one without such a history."

16. Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725 (1960).

17. *Id.*

18. Defendant's reliance on Mitchell v. United States, 103 U.S.App.D.C. 341, 258 F.2d 435 (1958), is misplaced since

ever, that any possible prejudice in such delay is accounted for, logically, by the Commissioner's decision that probable cause *exists*. The "delay" in cases such as this is caused by the required police procedure of establishing the veracity of informants' statements. This delay does not invalidate the search absent a showing of prejudice.[19] There was none here.

Second, a delay of one and one-half days between the issuance of a warrant and its execution is within the ten-day requirement of Rule 41(d). In this case, the time was used in the organization of a team of approximately twenty trained officers who were to conduct the search. Since no special prejudice was shown, the Court holds the time lapse was not fatal.[20]

III. Execution.

Finally, defendant asserts that the warrant was improperly executed. She states that the officers broke or forced open the door without first announcing either their identity or purpose and proceeded after a brief identification to sack her home. At a full evidentiary hearing on this matter, Sergeant Driscoll and Detective MacKinnon testified that they knocked at the door, announced their authority and purpose and entered when the door was opened from the inside.[21] Near the door they encountered the defendant who said, "Oh, it's you again."

The defendant testified that she was in a dining alcove and did not approach the front door until the officers broke in. She also testified that only James Hagan was on the couch near the door. Testimony of police officers, one looking through a partially covered window, contradicted this. The Court finds the defendant's testimony incredible; that of the officers credible and holds that execution of the warrant was proper.

Accordingly, the motion to suppress is denied.

## APPENDIX
### Narcotic Squad, MPDC
### December 22, 1967

AFFIDAVIT IN SUPPORT OF A APPLICATION FOR A U. S. COMMISSIONERS SEARCH WARRANT FOR the premises 5333 MacArthur Blvd. NW, Washington, D. C. consisting of a two story red brick and wood house and a green colored one story frame structure both of which occupy the same Property and the curtilage surrounding both of these structures which are occupied by Judith H. Kuch and Lucy Carmichael.

During the week of December 10, 1967 Detective Edmund MacKinnon received information from a previously reliable Source of information, who had given information on previous occasions which led to the arrest of persons for violation of the narcotics laws and which resulted in the seizure of marihuana, hashish and L.S.D. This Source stated that J. D. Kuch had moved into a house on MacArthur Blvd. NW near the district line and that she was setting up a laboratory to manufacture methedrine and other dangerous drugs in a building near where she was living.

On December 12, 1967 Detective Paul received information from a previously reliable Source of information, who had given the officer information in the past which had proven to be reliable, who stated that Judith Kuch alias J. D. was living at 5333 MacArthur Blvd. NW

---

*Mitchell* concerned the time lapse between the issuance and execution of the warrant.

19. Irby v. United States, 114 U.S.App.D. C. 246, 249, 314 F.2d 251, 254, cert. denied 374 U.S. 842, 83 S.Ct. 1900, 10 L. Ed.2d 1064 (1963) (8 days); Nuckols v. United States, 69 App.D.C. 120, 122, 99 F.2d 353, 355 (1938) (19 days); United States v. Long, 169 F.Supp. 730, 734 (D. D.C.1959) (11 days).

20. *See* Mitchell v. United States, 103 U.S. App.D.C. 341, 258 F.2d 435 (1958) (5 days).

21. 18 U.S.C. § 3109 (1964); *see* Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

along with Lucy Carmichael. This Source further stated that both of the women were selling L.S.D., marihuana and hashish out of the building. This Source advised Det. Paul that 5333 MacArthur Blvd. was a two story red brick and frame house which sat back from the street and that there was a green frame building which sat back about 100 feet behind the main house. The Source stated that it had seen both women in each of the buildings on different occasions and that it had also seen marihuana and L.S.D. in the buildings. This Source further stated that large groups of people come to the house and used drugs in the premises. This Source identified MPDC identification photograph #216056 as being that of Judith H. Kuch and MPDC identification photograph #214065 as being that of Lucy Carmichael.

On December 15, 1967 Detectives Paul and MacKinnon drove to the vicinity of 5333 MacArthur Blvd. NW and observed that it was a two story red brick and frame house which sat back from the street about 250 feet and that there was a green frame building which sat back about 100 feet behind the main house.

Investigation reveals that mail is being delivered to the premises 5333 Mac Arthur Blvd. NW in the names of Lucy Carmichael and Judith D. Kuch, and that this mail is delivered to the red house, and that no mail is delivered to the green house.

Further investigation reveals that the premises 5333 MacArthur Blvd. are listed jointly in the names of Lucy Carmichael and Terence D. Kuch. Judith Kuch had previously listed her husband's name as being Terence D. Kuch.

On September 13, 1967 Detectives Paul and MacKinnon along with other officers of the Narcotic Squad and agents of the Bureau of Drug Abuse executed a U. S. Commissioners search warrant at the premises 2323 Nebraska Avenue NW where Judith D. Kuch was placed under arrest and a quantity of marihuana, hashish, L.S.D. and other dangerous drugs and marihuana smoking pipes were seized in the premises. At the time of her arrest Kuch admitted to being a user of marihuana and other drugs and at the present time she is on bond awaiting trial, after having been indicted, for violation of the Marihuana Tax Act and the Drug Abuse Control Act.

On April 30, 1967 Detectives Paul and MacKinnon along with other members of the narcotic squad executed a DC Court of General Sessions search warrant at the premises 1130 25th Street NW. A quantity of marihuana, dangerous drugs, marihuana smoking pipes were seized in the premises and Lucy Carmichael, who stated that she was in charge of the premises was charged with maintaining a common nuisance and with violation of the Marihuana Tax Act. At the time of her arrest Carmichael stated that she was a user of marihuana and L.S.D.

The phone 244–8946 is listed to Terence D. Kuch at the premises 5333 MacArthur Blvd. NW.

During the period of December 15th through the 21st of 1967 Detective Paul placed the premises 5333 MacArthur Blvd. NW under surveillance. Detective Paul saw many persons entering and leaving the premises, most of whom were dressed in hippie attire. Detective Paul recognized some of the persons as known users of marihuana and on many occasions the officer observed a person park in front of the building, go inside for a short period of time and then leave.

On several occasions Detective Paul observed a MG convertible Md. tags CR–5748 park in front of 5333 MacArthur Blvd. and enter the red building. This auto is listed to a Samuel James Hagen of 1108 N. Tollgate Road, Bel Air, Maryland.

Detective Paul received information from the Bureau of Drug Abuse that in November of 1967 an illicit laboratory was searched on a warrant in Philadel-

phia, Pa. and a large quantity of drugs seized in the premises. Also found in the Philadelphia premises was a letter from a James Hagen of 1108 N. Tollgate Road, Bel Air, Maryland which indicated that Hagen was in the process of setting up an illicit laboratory for the purpose of making L.S.D. and other drugs.

While Detective Paul had the premises under surveillance he observed Judith Kuch in the red house on several occasions, and on one occasion observed her talking on the phone in the house. Detective Paul also saw some of the persons from the red house leave that house and enter the green frame house. During the surveillance on the premises it appeared that activity did not start at the green house until late at night or during the early hours of the morning.

During the surveillance Detective Paul observed a male subject leave the red house and walk over to a clump of grass where he bent down and then walked back into the red house.

Several of the autos which were seen to park in front of the premises were listed in the names of persons who are known users of marihuana.

Because of the information received from the previously reliable Sources of information along with the observations made by Detective Paul along with the prior involvement with drugs of both Judith D. Kuch and Lucy Carmichael the undersigned officers do believe that there is now marihuana, hashish, L.S.D. and marihuana smoking paraphernalia being secreted inside of both premises 5333 MacArthur Blvd. NW.

Edmund K. MacKinnon
—————————————
Detective Edmund MacKinnon
Narcotic Squad, MPDC

David Paul
—————————————
Detective Sergeant David Paul
Narcotic Squad, MPDC

Sworn to and subscribed to before me this 22nd day of December, 1967.

Sam Wertleb
—————————————
Sam Wertleb, U. S. Commissioner
Washington, D. C.

---

## SUPPLEMENTAL MEMORANDUM

Defendant has moved this Court to reconsider its opinion of October 28, 1968, in light of the Supreme Court's decision in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The Court accepted supplemental briefs and heard further argument. It is the conclusion of the Court that nothing in its prior opinion is inconsistent with the *Spinelli, supra,* holding. Indeed, *Spinelli, supra,* should not be viewed as a deviation from previously decided Supreme Court cases, on which this Court directly based its October 28 decision. The Supreme Court made it abundantly clear that these cases were not overruled.

*Spinelli, supra,* focuses on the Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), test for determining the validity of warrants based on affidavits in which the source of the information is undisclosed informants. It is now clear, if it was ever in doubt, that the *Aguilar* test for dealing with informants is two-pronged. First, facts must be set forth which are sufficient to indicate the reliability of the informant. Second, the means by which the informant acquired his information must be described in enough detail to permit the conclusion that the information itself is reliable. If either test is not met, a warrant may still express the requisite probable cause if there is extrinsic corroborative evidence which buttresses (a) the informant's reliability and/or (b) the reliability of his information.

■ The affidavit in this case cites information from two separate in-

formants. Under *Spinelli, supra,* both informants meet the *Aguilar* test. In any event, the second informant's information, even if unable to support a warrant by itself, may still be relevant as corroboration of what the first informant provided and vice versa.

The first informant qualified as a reliable informant by having given information in the past which led to arrests and the seizure of illicit drugs. The information he gave in this case was, however, admittedly unimpressive apart from its conclusion as to criminal activity. On its face, by not informing the magistrate of the means by which the knowledge was acquired, it is insufficient under the second prong of the *Aguilar* test. There is corroboration, however. The source said that J. D. Kuch had moved into a house on Mac-Arthur Boulevard near the District line and "was setting up a laboratory to manufacture" illicit drugs. He indicated that this was to be done in a separate building near her abode. Other information supported the facts that Mrs. Kuch was living on MacArthur Boulevard near the District line, on premises that included two separate buildings. Additionally, Detective Paul, the affiant, had received information from the Bureau of Drug Abuse Control that in November of 1967, in a fruitful search of an illicit drug laboratory in Philadelphia, a letter from one James Hagen had been found describing his plan to set up an illicit drug laboratory. This letter gave Mr. Hagen's address as 1108 N. Tollgate Rd., Bel Air, Md. An auto listed to Samuel James Hagen of the same address was viewed at the Kuch house on several occasions. Another factor which the Commissioner undoubtedly took into account was Mrs. Kuch's status as a known drug user. This was not based on reputation, but had been conclusively established by a recent, successful raid on her prior residence and by her own admission.

The second informant presents the reverse problem. The data which he proffered are extensive and detailed. There is, however, scanty background information pertaining to his reliability. The Court feels that this description is no less extensive than that approved in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Moreover, once again corroboration fills any interstices. The second informant related many facts which the police were able to confirm. He gave Mrs. Kuch's exact address. He described the premises with minutely accurate particularity. He gave the name of a co-resident, Lucy Carmichael, and identified both her and J. D. Kuch from police photographs. The police had previously executed a search warrant on premises occupied by Miss Carmichael and had seized illicit drugs. At that time she had admitted using marihuana and LSD. All this necessarily served to dispel any rational doubts which the Commissioner might have had as to the reliability of this second informant. There is no issue as to the reliability of his information since his source was personal observation. Although some of this corroboration is irrelevant to criminality, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), makes it clear that such information is properly cognizable on the issue of reliability, either of the informant or of his information.

Accepting the proposition announced in *Spinelli* that a bald reference to the totality of the circumstances paints with too broad a brush, one is not thus led to the conclusion that the totality of the circumstances must be ignored. When a Court or Commissioner is faced with a barrage of specific, verified information, it need not be viewed in a fragmentary manner. It may be evaluated in context as long as the fundamental tests of *Spinelli* and *Aguilar* are met.

On reconsideration the Court adopts by reference its reasoning in the October 28 opinion, with this memorandum as a supplement directed toward the precise issues raised by *Spinelli.* The motion to suppress is overruled.