**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**SANCHEZ DIAZ, Defendant**

Criminal No. 77/192

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**GLORIA LIBURD, Defendant**

Criminal No. 77/193

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**SANDORILLA I. THOMAS, Defendant**

Criminal No. 77/190

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**MARY MOORE, Defendant**

Criminal No. 77/191

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**OVILDA FRETT, Defendant**

Criminal No. 77/195

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**ERNEST R. FRETT, Defendant**

Criminal No. 77/196

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**MARGARITA L. HUERTES, Defendant**

Criminal No. 77/194

# Territorial Court of the Virgin Islands
## Div. of St. Thomas and St. John
## February 23, 1978

RODERICK Q. LAWRENCE, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for plaintiff*

BERNARD VAN SLUYTMAN, ESQ. (BIRCH, DE JONGH & FARRELLY), St. Thomas, V.I., *for defendants*

ALAN D. SMITH, ESQ., Territorial Public Defender, St. Thomas, V.I., *for defendants*

PETERSEN, *Judge*

### MEMORANDUM OPINION*

These cases came on for hearing before this court on February 17, 1978, on various motions to quash search warrants, suppress evidence, suppress verbal and written statements made by, and return monies and properties belonging to, the defendants above-named. Appearing on behalf of defendants Gloria Liburd and Sanchez Diaz was Alan D. Smith, Esquire, Territorial Public Defender. Appearing as counsel on behalf of defendants Sandorilla I. Thomas, Mary Moore, Ovilda Frett, and Ernest Frett was Bernard Van Sluytman, Esquire, of the law firm of Birch, de Jongh and Farrelly. Roderick Q. Lawrence, Esquire, Assistant Attorney General, appeared on behalf of the Government.

---

* An order of Judge Eileen R. Petersen dated Feb. 24, 1978, in Government of the Virgin Islands v. Margarita L. Huertes, Crim. No. 77/194, provided:

In a separate Memorandum Opinion and Order in Criminal Nos. 77/190, 77/191, 77/192, 77/193, 77/195, and 77/196, which opinion and order was issued February 23, 1978, this Court ordered the suppression of evidence gathered resulting from illegal searches of the defendants in each of those cases. It appearing to the court that it mistakenly omitted the above-styled cause in its order and opinion of February 23, 1978; and it further appearing to the court that the above-styled cause is in all its facts and issues similar to those of Criminal Nos. 77/190, 77/191, 77/192, 77/193, 77/195, and 77/196; and good cause appearing therefore, it is hereby

ORDERED that this court's memorandum and order of February 23, 1978 in the above-listed causes be and the same hereby is amended to include Criminal No. 194/1977, *to wit* "Government of the Virgin Islands vs. Margarita L. Huertes," and that evidence gathered pursuant to the illegal search in said cause be suppressed from introduction in any trial on the merits.

. Each of the defendants herein has been charged with violation of 14 V.I.C. § 1223(2)[1] in at least one count, for the alleged sale of a "ticket, chance, share, or interest" of the Puerto Rican national lottery, a lottery "other than an official lottery of the Virgin Islands of the United States," in Charlotte Amalie, St. Thomas, United States Virgin Islands.

## I.

The defendants herein were all arrested on October 20, 1977, by officers of the St. Croix Vice Squad, culminating a long-term investigation by the Vice Squad of purported sales of Puerto Rican lottery tickets in the area of Market Square, St. Thomas. Affidavits testifying as to the illegal sale of such tickets by each of the defendants were sworn and signed by Agent Edward Aviles of the Vice Squad; pursuant to these affidavits, individual search warrants were sworn out against each of the defendants by Judge Irwin J. Silverlight, Territorial Court, Division of St. Croix, on October 19, 1977. Each of the defendants herein was searched and arrested.

Among the articles found on each of the defendants were Puerto Rican lottery tickets and substantial sums of money, though the fact that each defendant was an official salesperson for the Virgin Islands lottery and, in at least one case, an independent company, tends to deny the certainty that such sums were "monies indicating ticket sales" as specified in the search warrants. Each defendant was arrested subsequent to search; each defendant was

---

[1] 14 V.I.C. § 1223 states:

> Whoever sells, gives or in any manner whatsoever furnishes or transfers to or for any other person—
> (1) any ticket, chance, share or interest; or
> (2) any paper, certificate or instrument purporting or understood to be or represent any ticket, chance, share or interest—in or depending upon the event of any lottery other than an official lottery of the Virgin Islands of the United States, shall be fined not more than $200.00 or imprisoned not more than 1 year, or both.

informed of his/her constitutional rights to silence and to the presence of an attorney. Each defendant signed the inventory of personal effects, belongings, and monies taken from him or her.

Defendants Diaz and Liburd, through counsel, now move this court to quash the search warrants issued for them and suppress all evidence seized pursuant to the warrant, alleging violation of Fed. R. Crim. Pro. § 41(c), *to wit*, the failure of the search warrant to be signed by a Judge of the Territorial Court, and further alleging that the contents of the affidavit in support of said warrant were so stale as to insufficiently provide cause for its issuance. Defendants Thomas, Moore, Frett and Frett similarly moved, basing their motion on the alleged violation of Fed. R. Crim. Pro. § 41(c) and further arguing that their signatures to inventory lists, without specific forewarning of the right to not sign, constituted custodial interrogation without advice of rights in contravention of the law pursuant to Miranda v. Arizona, 86 S.Ct. 1602, 384 U.S. 436 (1966), warranting suppression of any and all evidence gathered thereby.

█ It is a well-established rule that "the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*." Sgro v. United States, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932) (emphasis added).

In each of the actions presently before the court, there exists a twenty-one day interim between the *only* specifically alleged instance of criminal activity and the citation of that instance as probable cause for warrant issuance and subsequent search. The court is well aware that no specific guidelines can exist to determine the timeliness of proof—that, rather, the nature of the unlawful activity involved requires the careful consideration of how long an incident of criminal behavior can be said to "probably"

indicate the necessity, or the fruitfulness, of a search. Obviously, no hard and fast rule can be formulated as to what constitutes excessive staleness, because each case must be judged in its circumstantial context. Factors like the nature of the criminal activity under investigation and the nature of what is being sought have a definite bearing on where the line between stale and fresh information should be drawn in a particular case.[2]

As counsel for Diaz and Liburd and counsel for the remaining four defendants each adopted the other's arguments of law at the hearing of February 17, 1978, the court need not now address separately issues raised by either counsel as solely pertaining to their clients. Without reference to the alleged violations here of Rule 41(c) of the Federal Rules of Criminal Procedure, or to the question of whether authorities properly advised the defendants herein of their rights as to signing the lists of their personal effects, the court finds the affidavits in support of search warrants as to each of these defendants fatally stale, and orders all evidence seized pursuant to said warrants suppressed. The court outlines its reasons for this decision below.

## II.

The affidavits in question in this case uniformly allege the following:

1. That Vice Squad investigation, the result of what is termed "intermittent surveillance" beginning December

---

[2] The Supreme Court recently upheld a warrant against a similar argument in a case where there had been a three month delay between the completion of the transactions on which the warrants were based and the ensuing search. See Andresen v. Maryland, 427 U.S. 463, 478 n.9 (1976). In that case there was probable cause to believe that the defendant's offices contained evidence of the crime since the business records were prepared in the ordinary course of the defendant's business in his law office or that of his real estate corporation and since the special investigators who were investigating the complex real estate scheme knew that the defendant had secured a release on one lot with respect to one lienholder only 3 weeks before the searches and that another then remained to be released.

24, 1976—determined that a group of approximately sixteen persons sold Puerto Rican lottery tickets on a regular basis in the Market Square;

2. That the individual defendants (referred to by aliases invented for purposes of convenience by the Vice Squad agents) on September 29, 1977, either were observed selling, or actually sold to an agent, Puerto Rican lottery tickets; and that

3. Based on that information, there existed probable cause to believe the individual defendants to be engaged in the illegal sale of such tickets.

Each affidavit supplemented its alias reference with a reasonably detailed physical description of the individual to whom the alias had been applied. The court rejects contentions that such descriptions were incomplete or so inaccurate that probable cause could be found lacking purely on the basis of incompleteness or inaccuracy.

██ However, the court cannot so easily overlook the 21 days' interval between September 29, 1977, when the alleged criminal activity occurred which was the basis for each warrant, and October 19, 1977, when the affidavits were submitted and warrants issued pursuant thereto. This calls into question the "vitality" of the information giving rise to these search warrants. Indeed, the court finds that information, and the affidavits, so stale as to be incapable of providing the probable cause requisite to the issuance of a warrant which does not violate the defendants' rights as protected by the Fourth Amendment of the United States Constitution.

### III.

██ In order for an affidavit to sufficiently allege probable cause, and justify the issuance of a search warrant, the facts submitted must justify the conclusion

. . . that the property which is the object of the search is probably on the person or premises to be searched *at the time the warrant is issued*. The most convincing proof that the property was in the possession of the person upon the premises at some remote time in the past will not justify a present invasion of privacy.

*Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968) (emphasis added). As summarized in the case of *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972):

[T]he vitality of probable cause cannot be qualified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. . . . Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, the passage of time becomes less significant.

Examining the particulars of both these affidavits, and the criminal activity which they allege, the court can find no rationale for the twenty-one days between them which justifies so long a delay. The plaintiff, in oral argument, attempted to establish that in fact lottery sales are inherently "protracted and continuous" in nature. Were the affidavits herein considered to clearly and affirmatively allege this condition, perhaps the court could be persuaded that the three weeks' interim between the alleged sales, and the affidavits citing such sales, was a permissible lapse of time.[3]

However, no such statement of ongoing criminal activity on the part of *any* of these defendants exists in *any* of the

[3] An interval of some 25 days between the occurrence of the facts relied upon and the making of the affidavits was deemed sufficient to establish probable cause in United States v. Long, 169 F.Supp. 730 (1959) where the affidavit included an account of *extended observations* prior to the time of the occurrence recited which the court said tied the defendant to the gambling operations which were being prosecuted.

affidavits. Each makes reference to a group of sixteen regular sellers of Puerto Rican lottery tickets. Each cites one of the defendants as a one-time seller. No link is made between the so-called "sixteen" and any of these defendants, however; indeed, in the ambiguous description of the Vice Squad investigation it is often difficult for the court to deduce just who was watched, for how long, or what was observed.

■■ It has been held that the provision of Rule 41(c) of the Federal Rules of Criminal Procedure that a warrant may issue "only on affidavit . . . establishing the grounds for issuance" means that the affidavit *by itself* must establish probable cause for a search warrant. United States v. Freeman, 358 F.2d 459, 462 (2nd Cir. 1966). See also United States v. Sterling, 369 F.2d 799, 802 n.2 (3rd Cir. 1966). The existence of probable cause requires a decision in light of the particular situation taking into account all of the circumstances. This can only be determined by a careful consideration of what relevant facts are not stated as well as those that are alleged. See e.g. People v. Siemieniec, 118 N.W.2d 430, 100 A.L.R.2d 522 (1962). There is nothing in the present affidavits from which a magistrate could "reasonably conclude that any of the activities described continued beyond the dates stated in the affidavit." Durham v. United States, supra at 195.

The court is mindful that documents such as the affidavits before the court "must be tested and interpreted by magistrates and courts in a common sense and realistic fashion," and that "technical requirements of elaborate specificity once enacted under common law pleadings have no place in this area." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Nevertheless, there is a standard of clarity, and a necessity for timeliness, beneath which an affidavit cannot fall

and still allege probable cause with sufficiency to insure a legal and lawful search pursuant to warrant. In waiting twenty-one days from the moment of incriminating behavior to the submission of an affidavit, and in failing to indicate any of the suspects' continuing involvement in any criminal activity, these affidavits fail to meet that standard—however generously it be construed by this court in favor of the exigencies of criminal investigation.

The court is thus compelled to find the warrants authorizing search of each of these defendants, and the resulting searches therefore, unlawful. The evidence gathered from the search of the defendants must be suppressed from being brought forward at the trial on the merits.